**LOCKARD v. COMMISSIONER OF IN-TERNAL REVENUE.**

**No. 4255.**

Circuit Court of Appeals, First Circuit.

Feb. 5, 1948.

James D. Dow, of Boston, Mass., for petitioner.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., and Helen R. Carloss, Sp. Asst. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Barbara M. Lockard petitions for review of a decision of the Tax Court of the United States determining that "there is a deficiency in gift tax of $5,517.39 for the year 1941." 7 T.C. 1151.

Petitioner undoubtedly made a taxable gift in 1941. In her return she claimed the full $40,000 specific exemption. Internal Revenue Code, § 1004, 26 U.S.C.A. Int.Rev. Code, § 1004. The Commissioner disallowed this exemption to the extent of $22,595.95 on the ground that petitioner had claimed and been allowed an exemption of $19,363.-93 in respect of a taxable gift made in 1938 and an exemption of $3,232.02 in respect of a taxable gift made in 1939. Petitioner now contends that she erroneously reported taxable gifts in 1938 and 1939, and therefore that no part of the specific exemption was properly consumed in either year. It is conceded by the Commissioner that the amounts which were claimed as exemptions in 1938 and 1939 were "allowed" within the meaning of I.R.C. § 1004(a) (1)—and thus pro tanto exhausted the $40,000 specific exemption—only if the taxpayer made taxable gifts in those years. Kathrine Schuhmacher v. Commissioner, 8 T.C. 453, 464 (1947); Carl J. Schmidlapp v. Commissioner, 1941, 43 B.T.A. 829. On this branch of the case the question is whether the beneficiary's irrevocable right to receive the income from the corpus of a short term trust constitutes a taxable gift in the year in which the property is transferred to the trust, notwithstanding the fact that the settlor may remain taxable on such income under the doctrine of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 88 L.Ed. 788.

There is also a question as to the valuation for gift tax purposes of the gift in 1941 of a right to income for life, with discretionary power in the trustee to distribute corpus up to a certain amount in each year if he deemed it necessary for the life tenant's comfortable maintenance and support.

On March 30, 1938, the petitioner created an irrevocable trust, with herself and another as cotrustees, under the terms of which the entire net income was directed to be paid to Derwood W. Lockard, her husband, for a term of six years; and upon April 1, 1944, or if the husband should die earlier, then on the date of his death, the principal was to revert to the settlor, free of trust. On March 30, 1939, the petitioner transferred additional property to the trust.

■ The Tax Court held that the transfers in trust in 1938 and 1939 constituted taxable gifts to Mr. Lockard, in those years, of the right to receive the income for a term of years; and therefore that the amounts of specific exemption claimed by petitioner in her gift tax returns for those two years, and allowed by the Commissioner, must be deducted from the $40,000 specific exemption claimed by her in her return of the 1941 gift. We agree with this conclusion. Valuation of these gifts in 1938 and 1939 is covered by stipulation and is not in dispute.

Section 501(b) of the Revenue Act of 1932, 47 Stat. 245, 26 U.S.C.A. Int.Rev.Acts, page 580, which is applicable to the transfers in 1938 and 1939, provides that the gift tax is applicable "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible". That the broad sweep of this language was not inadvertent is emphasized in the committee reports. H.R.Rep. No. 708, 72d Cong., 1st Sess., at p. 27, stated: "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value." See to the same effect Sen.Rep. No. 665, 72d Cong., 1st Sess., p. 39. See also Smith v. Shaughnessy, 1943, 318 U.S. 176, 180, 63 S.Ct. 545, 547, 87 L.Ed. 690, in which the court states that the amplitude of legislative purpose, thus expressed, "is broad enough to include property, however conceptual or contingent."

By the transfer in trust in 1938, Mr. Lockard acquired an equitable right to the income from the property for a period of six years, subject only to his earlier death. He then received a legally protected interest "having an exchangeable value"; and the commuted value of this right to future income is readily calculable. Helvering v. McCormack, 2 Cir., 1943, 135 F.2d 294, 296. See art. 19(7) of Regulations 79 (1936 Ed.). To the extent of this interest, the settlor abandoned control of the property upon its transfer in trust. Not only did the settlor reserve no power to revoke, and revest in herself, the beneficial interest thus donated; she could not even modify the donee's interest or shift the benefit, in whole or in part, to another. The transfer, therefore, meets every test of taxability under the language of the Act and under the criteria laid down in Smith v. Shaughnessy, supra. The same may be said of the additional transfer to the trust made in 1939.

The foregoing conclusion would have seemed inevitable and inescapable if one had never heard of Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, a case involving income tax liability. It is recited in the stipulation in the case at bar that the distributable trust income for the years 1938-1941, inclusive, was included by the Commissioner in the income of Mrs. Lockard under I.R.C. § 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a), as interpreted in the Clifford case. Exegesis of Helvering v. Clifford has proceeded apace, and not without difficulty, in a large volume of subsequent litigation in the lower federal courts. See United States v. Morss, 1 Cir., 1947, 159 F.2d 142. No doubt there would be many judicial sighs if the great body of Clifford learning had to be imported into gift tax litigation. But as this court held in Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, 337, 133 A.L.R. 977, "the gift tax does not seem to be so closely integrated with the income tax that decisions like the Clifford case extending the applicability of Section 22(a) to the grantor of a trust, must necessarily be read as holding that no gift tax was payable upon the creation of the trust."[1] We tried to point out again, at considerable length, in Higgins v. Commissioner, 1 Cir., 1942, 129 F.2d 237, certiorari denied 1942, 317 U.S. 658, 63 S.Ct. 57, 87 L.Ed. 529, that under existing provisions of law respecting income, gift and estate taxes, it is quite impossible for the courts to achieve a complete integration of these three taxes. Chief Justice Stone made an apparent effort in Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct.

[1] In fact, in the Clifford case itself, in which the income of a particular short term trust was held taxable to the settlor-trustee, the Court noted (309 U.S. at page 333, 60 S.Ct. 554, 84 L.Ed. 788) that the settlor had paid a federal gift tax upon the transfer in trust.

51, 84 L.Ed. 20, to bring about a measure of correlation between the gift tax and the estate tax, by his statement page 44 of 308 U.S., page 56 of 60 S.Ct., 84 L.Ed. 20, that the test of completeness of a transfer for purposes of the gift tax is no different "from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death." Cf. Higgins v. Commissioner, supra, 1 Cir., 129 F.2d at page 240-242. But in Smith v. Shaughnessy, 1943, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690, the Supreme Court disavowed any intention to intimate in the Sanford case that there was "a general policy against allowing the same property to be taxed both as an estate and as a gift" page 178 of 318 U.S., page 546 of 63 S.Ct., 87 L.Ed. 690; and pointed out that the plan of Congress for integrating the estate and gift taxes is to be found in the provision of law granting a credit on estate taxes by reason of previous payment of gift taxes on the same property—a "system of secured payment on gifts which will later be subject to the estate tax" page 179 of 318 U.S., page 547 of 63 S.Ct., 87 L.Ed. 690. Aside from this, it seems that for the most part any correlation that may exist between the three taxes is "purely coincidental".

Petitioner does not contend that there is a complete integration between the income tax and gift tax, so that the mere fact that a transfer leaves the transferor still liable to income tax on the property always negatives a gift tax liability; but she does argue that the same question of fact underlies both liability for income tax under the Clifford rule, and liability for gift tax—namely, whether the settlor, after the transfer in trust, remains in substance the owner of the corpus. If, notwithstanding the transfer, the settlor is deemed to remain in substance the owner of the corpus, the income therefrom—the fruit of the tree—is, for income tax purposes, attributable to the settlor, and the settlor does not escape an income tax thereon "by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys

the benefit of the income on which the tax is laid." Harrison v. Schaffner, 1941, 312 U.S. 579, 582, 61 S.Ct. 759, 761, 85 L.Ed. 406. See Commissioner v. Bateman, 1 Cir., 1942, 127 F.2d 266, 271-274. Petitioner argues from this that, for income tax purposes, the result is the same as if the settlor of the short term trust had continued to receive the income yearly and had made a series of assignments of such income. It is contended, further, that similar treatment for gift tax purposes is appropriate, so that no gift tax should be payable when the trust is created, but actual payments of income to the beneficiary should be taxable as gifts when such payments are made from year to year. This suggested mode of treatment may be appropriate and reasonable; the only trouble with it is that it is not sanctioned by the statutory scheme. As we have already pointed out, the income tax and gift tax each has its own independent criteria of taxability. In the trust now before us it may be true, under Helvering v. Clifford, that for income tax purposes the result is the same as if Mrs. Lockard had herself received the income each year and had made a series of assignments of it to her husband. But the fact is that she did not receive the income and then give it away by successive assignments. Upon creating the trust she made a single transfer whereby her husband then and there acquired an irrevocable right to the income for a period of years. Under the plain language of the gift tax, and under the authorities above cited, this intangible right to future income must be valued as of the date of the transfer in trust, and taxed to the donor. Accord, 2 Paul, Federal Estate and Gift Taxation, § 17.17 (1942).

We come now to the remaining question in the case, as to the valuation of the gift made by petitioner in 1941.

On December 31, 1941, petitioner, having meanwhile resigned as cotrustee, executed an instrument in which she undertook to assign to the remaining trustee all her reversionary interest in the trust and directed the trustee to continue from and after April 1, 1944, if Mr. Lockard should then be living, to hold the trust property in trust for the following purposes:

"2. Until the death of my said husband, Derwood W. Lockard, to pay the entire net income thereof to him, and to pay to him such amounts from principal, not in excess of $3,000 in any calendar year, as the trustee in his uncontrolled discretion shall think necessary for the comfortable maintenance and support of the said Derwood W. Lockard.

"3. Upon the death of said Derwood W. Lockard to transfer the principal then held to me if I shall then be living, and if I shall not then be living, to my executors, administrators or assigns free of trust".

Since petitioner had reserved no power to amend the terms of the original trust, this instrument of December 31, 1941, was perhaps technically the creation of a new trust rather than an extension of the term of the old one. In any case, the instrument constituted a new taxable gift to Mr. Lockard. Since he already had the irrevocable right to receive the income up to March 31, 1944, the new gift was of the right to receive the income from and after April 1, 1944, for the remainder of his life, plus the right to receive such amounts from principal, not in excess of $3,000 in any calendar year, as the trustee might in his uncontrolled discretion think necessary for the life beneficiary's comfortable maintenance and support.

In her gift tax return for 1941, petitioner valued this new gift to Mr. Lockard at $55,000. The Commissioner ruled that this valuation should be increased to the amount of $99,459.37, which amount, according to the stipulation, is the "value as of December 31, 1941, of the right of the beneficiary to receive each year after March 30, 1944, the amount of $3,000 from the principal of the trust together with the income of the diminishing trust fund, for the remainder of his life". Part of the deficiency determined by the Commissioner was attributable to this increase in the valuation of the gift. The Tax Court upheld the Commissioner.

Petitioner challenges this ruling on the ground that it treats the discretionary power in the trustee to make payments out of principal up to a maximum of $3,000 a year as a completed gift to the beneficiary of the absolute right to receive such payments, disregarding the limitations imposed on the trustee's power to invade the principal. It is argued that, since the corpus may never be invaded, the gift in 1941 should be valued at the sum of $84,535.90, which is the stipulated "value as of December 31, 1941, of the right of the beneficiary to receive the trust income after March 30, 1944, for the remainder of his life"; and that, if and when invasion of the corpus may become necessary, gifts of principal will then become complete and subject to the gift tax in the years in which principal is actually distributed. This argument of petitioner, as the Tax Court conceded, "is an impressive one and has a strong practical appeal." Nevertheless, we feel obliged to sustain the Tax Court in rejecting it.

By the transfer in 1941, there was a gift of something more than a right to future income; there was also a gift of another intangible interest of a contingent nature, a right to receive payments out of principal, to a maximum of $3,000 in any calendar year, to the extent that the trustee should deem such payments necessary for the comfortable maintenance and support of the beneficiary.[2] This interest, which will be protected by a court of equity, is certainly worth something, despite its contingent nature; in fact the donee could hardly fail to regard its existence as a valuable assurance against future adversity, and it certainly is a property interest within the broad terms of the gift tax law. The gift in its entirety must be valued as of the date of the gift.

---

[2] It might be suggested that the gift of this contingent interest in corpus should be regarded as not "complete" for gift tax purposes, because it is subject to the discretionary power of the trustee, a person who has no interest in the trust estate adverse to the settlor. But this suggestion, however intrinsically reasonable, is inadmissible in view of the legislative history of the gift tax with reference to the closely analogous power of revocation, for it there clearly appears "that Congress intended the gift tax to fall on transfers in trust where the power to revoke is held solely by others, regardless of their complete lack of interest." 2 Paul, Federal Estate and Gift Taxation, § 17.11 (1942), and id. 1946 Supplement. See Commissioner v. Prouty, supra, 1 Cir., 115 F.2d at 333; Higgins v. Commissioner, supra, 1 Cir., 129 F.2d at 242.

414

I.R.C. § 1005, 26 U.S.C.A. Int.Rev. Code, § 1005. If it be objected that the valuation fixed by the Commissioner ignores the limitations upon the trustee's power to invade corpus, it is equally true that petitioner's suggested valuation of the 1941 gift ignores the beneficiary's contingent interest in the principal conferred upon him by the transfer in trust executed by petitioner on December 31, 1941.

The government argues that, by the transfer of December 31, 1941, "the taxpayer relinquished completely her right to have the corpus to the extent of $3,000 annually returned to her"; that she "parted completely with the reversion to, and dominion over corpus to this extent"; and that, since so much of the corpus as will be necessary to pay such annuity of $3,000 per year for the remainder of the beneficiary's life "cannot be returned to her except because of contingencies beyond her control," she must be deemed to have made a taxable gift of corpus to this extent under the authority of Robinette v. Helvering, 1943, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700, and Smith v. Shaughnessy, 1943, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690. We would not put the matter quite this way. The taxpayer did not relinquish completely the right to have the corpus returned to her intact at the termination of the trust. She retained the right to have the corpus so returned to her, except in so far as the trustee might find it necessary, within the limits of his discretionary power, to invade the corpus. It is true, as the government says, that the corpus cannot be returned to her intact "except because of contingencies beyond her control"; but that is not the test of her taxability for a gift in 1941 of an interest in corpus. This is apparent from Smith v. Shaughnessy, supra, where there was an irrevocable transfer of property in trust, the income to be paid to the settlor's wife for life, and upon her death the corpus to go to the settlor if living, or, if not, to the wife's heirs. The government conceded "that the right of reversion to the donor in case he outlives his wife is an interest having value which can be calculated by an actuarial device, and that it is immune from the gift tax." 318 U.S. at page 178, page 546 of 63 S.Ct., 87 L.Ed. 690. This concession was made notwithstanding the fact that the corpus could not be returned to the donor except upon a contingency beyond the donor's control, namely, the predecease of the donor's wife.

■■ The real difficulty with the petitioner's case here is that the Commissioner's determination is presumptively correct; and petitioner has not suggested, and cannot suggest, any reliable actuarial method of computing the value of her reserved right to receive the corpus back intact in case the trustee should not find it necessary to invade the corpus, to the extent permitted, for the comfortable maintenance and support of Mr. Lockard during the remainder of his life. Robinette v. Helvering, supra. See Rheinstrom v. Commissioner, 8 Cir., 1939, 105 F.2d 642, 648, 124 A.L.R. 861; Herzog v. Commissioner, 2 Cir., 1941, 116 F.2d 591. Indeed, the stipulation of facts does not even furnish a sufficient basis for an informed guess, as of December 31, 1941, with respect to the likelihood of an invasion of corpus. No facts appear as to Mr. Lockard's accustomed scale of living, nor as to his other sources of income, if any. Considering Mr. Lockard's age (thirty-four, in 1941), the trust might well last for twenty or thirty years; and on the facts of record it could not be assumed to be unlikely that the trustee would find it necessary to invade the corpus for the beneficiary's "comfortable maintenance and support", in view of the modest income that might be expected from a trust estate of not over $140,000. It appears from the stipulation that, up to October 1, 1945, the trustee had in fact not made any payment to Mr. Lockard from the principal of the trust. But events subsequent to the date of the transfer have no bearing on the value of the gift as of the date it was made. Cf. Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647.

A judgment will be entered affirming the decision of the Tax Court.